**HGP INDUSTRIES, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 78463.

Supreme Court of Missouri,
En Banc.

May 28, 1996.

Steven W. Koslovsky, Richard A. Yawitz, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Andrew J. Lay, Assistant Attorney General, Jefferson City, for Respondent.

PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE HEARING COMMISSION Honorable Paul R. Otto, Commissioner

LIMBAUGH, Judge.

HGP Industries (HGP) seeks review of the Administrative Hearing Commission's decision upholding the Director of Revenue's (Director) denial of HGP's application for a direct pay authorization and sales tax exemption. HGP sought the exemption for the sales tax imposed on its purchases of electrical energy used in certain alleged secondary stages of processing of raw glass into a variety of glass products. Because this case involves the construction of § 144.030.2(12), RSMo 1994, a revenue statute, we have jurisdiction. Mo. Const. art. V, § 3. Consistent with our holding in *Mid–America Dairymen v. Director of Revenue*, 924 S.W.2d 280 (Mo. banc 1996), we reverse and remand for a new hearing.

HGP operates a plant in Warrenton, Missouri, where it converts raw annealed glass into a variety of products, such as insulated windows, shower doors, shelving, and partitions. These products are custom made to order. For the years 1990, 1991, and 1992, HGP sought a direct pay authorization for the sales tax on the electricity purchased in connection with its glass fabrication and glass tempering operations, which HGP characterizes as secondary processing. HGP allocated its substantial raw material costs to the alleged primary process of glass cutting. The Director denied HGP's applications on the basis that HGP's operations were actually one continuous process with no separation between primary and secondary processing. The AHC upheld the Director's decision.

Section 144.030.2(12) provides a sales tax exemption for the following:

Electrical energy used in the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used.

In *Mid–America Dairymen*, this Court set out the analysis required to determine whether a given procedure qualifies for the exemption or not. HGP must first show that what it alleges to be primary processing does in fact work a transformation on the subject matter and result in a new product with a new identity, use and market value.

Assuming that is shown, HGP must then show that the product resulting from the primary processing is the subject of the alleged secondary processing, which transforms the product into yet another new article with a new identity, use and market value.

▮ As in *Mid–America Dairymen,* this case, too, turns ultimately on the question of whether HGP met its burden of proof to qualify for the exemption. Neither HGP, nor the Director, nor the AHC had the benefit of the clarifying definition of primary and secondary processing set out in *Mid–America Dairymen* and incorporated in this case. We observe, however, that it may be more difficult for HGP to prove marketability of the output from its alleged primary processing, given the fact that nearly everything it produces is custom made to order. Still, we find that the record, derived as it is from HGP, the Director, and the AHC's incomplete understanding of how to draw the line between primary and secondary processing, provides an insufficient basis for a determination by this Court as to whether HGP proved its entitlement to the exemption. Under these circumstances, the judgment of the AHC must be reversed and the case remanded for a new hearing consistent with this decision.

It is so ordered.

All concur.